**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                    No. 99-4497

RANDOLPH E. DAWSON,
Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Leonie M. Brinkema, District Judge.
(CR-99-88)

Argued: April 4, 2000

Decided: May 19, 2000

Before WILKINSON, Chief Judge, TRAXLER, Circuit Judge,
and Roger J. MINER, Senior Circuit Judge of the
United States Court of Appeals for the Second Circuit,
sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Dale Warren Dover, Alexandria, Virginia, for Appellant.
Andrew L. Snowdon, Special Assistant United States Attorney,
OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Vir-
ginia, for Appellee. **ON BRIEF:** Helen F. Fahey, United States Attor-
ney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria,
Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Randolph Dawson appeals from a judgment of conviction entered in the district court on one count of operating a motor vehicle after having been declared an habitual offender in violation of 18 U.S.C. § 13, assimilating Va. Code § 46.2-357(B)(3). On the night of January 25, 1999, Dawson drove a vehicle onto the U.S. Marine Corps Base in Quantico, Virginia and could not produce a driver's license when asked to do so at the gate. He was arrested after the gatekeeper ran a Virginia Criminal Information Network check that showed Dawson's license had been revoked and that he had two previous convictions in Virginia for driving on a suspended license.

On May 5, 1999, a bench trial was held in the district court. The evidence at trial showed that Dawson had been adjudicated an habitual offender by order of the Circuit Court of Fairfax County, Virginia dated May 21, 1992, and that his license to drive had been revoked pursuant to § 46.2-355 of the Virginia Code. The revocation came after several convictions for driving under the influence of alcohol, the last one arising from a January 1992 incident that led to Dawson's conviction for "Driving While Intoxicated, 3rd Offense within 5 years." The evidence also showed that since losing his license, Dawson had pled guilty on two occasions to driving on a suspended license, once in the General District Court of Prince William County on February 13, 1995 and again in the General District Court of Fairfax County on March 31, 1995. Based on these facts, the court found Dawson guilty of one count of "Unlawful Operation of a Motor Vehicle While a[n] Habitual Offender," in violation of 18 U.S.C. § 13, assimilating Va. Code § 46.2-357(B)(3).

The district court continued the case for sentencing until July 2, 1999, pending completion of the presentencing investigation and report. On that date, Dawson asserted that his conviction had been

2

rendered a nullity by the July 1, 1999 legislative repeal of the adjudication provisions of the Virginia Habitual Offender Act, Va. Code §§ 46.2-351 through 46.2-355. The government opposed the motion to set aside the conviction on the ground that only the adjudication provisions, but not the enforcement provision, of the habitual offender statute had been done away with under the new law. The court found that the legislature had made administrative and procedural changes to the law governing serious traffic offenses, but that the "underlying substantive offense" with which Dawson was charged "still [wa]s on the books." The court therefore imposed a sentence of eighteen months in prison, three years supervised release and a $100 special assessment. This appeal followed.

We review questions of statutory construction de novo. See United Mine Workers v. Martinka Coal Co., 202 F.3d 717, 720 (4th Cir. 2000). Dawson likens his case to that of the defendants in United States v. Chambers, 291 U.S. 217 (1934). There, the indictments under the National Prohibition Act were dismissed after passage of the Twenty-First Amendment, on the basis of the rule that criminal prosecutions must be halted when their underlying law has lost its force. See id. at 222-23. We find that argument unpersuasive here. An examination of Chapter 945 of the Virginia Acts of Assembly, 1999 -- entitled "An Act to amend and reenact [fourteen subsections] of the Code of Virginia, to amend the Code of Virginia by adding a section numbered 46.2-355.1, and to repeal §§ 46.2-351 through 46.2-355 of the Code of Virginia, relating to habitual offenders; penalty" (hereinafter, "the Act") -- shows that Chambers is inapposite. Even though the Act puts an end to new convictions for the crime of being an "habitual offender," the law evinces no intent to deprive the state of its enforcement power to penalize those who had already been adjudged habitual offenders prior to its enactment.

Section 46.2-357, the enforcement section of the old habitual offender statute, is hardly changed, having acquired in its definitional subsection only the following italicized text: "It shall be unlawful for any person determined or adjudicated an habitual offender to drive any motor vehicle . . . on the highways of the Commonwealth while the revocation of the person's driving privilege remains in effect." Va. Code § 46.2-357(A). This language shows that the legislature contemplated and provided for the continued regulation of individuals who

3

had received habitual offender status before implementation of the Act.

Perhaps most significant for purposes of this appeal is the fact that the penalty provision for an adjudicated habitual offender's second offense (driving on a suspended or revoked license, see Va. Code § 46.2-357(B)(2)) has not been altered in the least. It states that such an offender shall be "guilty of a felony punishable by confinement in a state correctional facility for not less than one year nor more than five years." Va. Code § 46.2-357(B)(2)&(3). Dawson was sentenced within those parameters; his presentencing report set the statutory minimum and maximum sentences as one and five years respectively.

Based on the foregoing, we find that the Virginia General Assembly evinced its intent to enact a new, stiffer law dealing with those who commit serious traffic violations, and that it drafted the legislation in such a way as to provide saving provisions for the penalties to be imposed on those it previously chose to designate habitual offenders for having accumulated such violations. Because the legislature continues to recognize a class of persons who have already been designated habitual offenders, Dawson's contention that his conviction has been deprived of its "statutory underpinnings" is without merit.

We likewise find Dawson's equal protection argument to be unavailing. Dawson argues that the Act creates a class of habitual offenders who are treated differently under the traffic laws than are those who now commit the same types of infractions. While this is undoubtedly correct, we find the Act's classification scheme to be rationally related to a legislative goal. See FCC v. Beach Communications, Inc., 508 U.S. 307, 313-14 (1993) (stating that statutory classifications that neither affect members of a suspect class nor infringe upon fundamental constitutional rights are subject to a rational basis standard of review). There can be no doubt that retaining the classification of habitual offender that existed prior to July 1, 1999 is rationally related to the Virginia General Assembly's goal of regulating traffic safety. Furthermore, the legislature could hardly be expected to reclassify past offenders under the new scheme, as ex post facto problems would then arise.

AFFIRMED

4